```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF MINNESOTA
               Civil No. 12-1109(DSD/LIB)
```

Comfort Attiogbe-Tay,

      Plaintiff,

v.                                     **ORDER**

SE Rolling Hills LLC,
a foreign corporation
doing business as The
Colony at Eden Prairie,

      Defendant.

      Howard L. Bolter, Esq. and Borkon, Ramstead, Mariani, Fishman & Carp, Ltd., 5401 Gamble Drive, Suite 100, Parkdale I, Minneapolis, MN 55416, counsel for plaintiff.

      Aaron M. Scott, Esq., Elizabeth A. Patton, Esq., Robert C. Castle, Esq. and Oppenheimer, Wolff & Donnelly LLP, 222 South Ninth Street, Suite 2000, Minneapolis, MN 55402, counsel for defendant.

This matter is before the court upon the motion for summary judgment by defendant SE Rolling Hills LLC, doing business as The Colony at Eden Prairie (The Colony). Based on a review of the file, record and proceedings herein, and for the following reasons, the court grants the motion.

**BACKGROUND**

This employment dispute arises out of the June 3, 2010, termination of plaintiff Comfort Attiogbe-Tay by The Colony. Attiogbe-Tay was employed as a Licensed Practical Nurse (LPN) at The Colony, a senior living facility in Eden Prairie, Minnesota,

from 2004 until her termination. Am. Compl. ¶¶ 2, 5. Attiogbe-Tay worked the overnight shift at The Colony and cared for approximately 160 assisted living patients. Attiogbe-Tay Dep. 71:14-23, 72:11-17.

During her employment with The Colony, Attiogbe-Tay began experiencing severe knee pain due to degenerative joint disease and arthritis. Attiogbe-Tay Aff. ¶ 2. On several occasions, Director of Nursing Christy Anderson questioned Attiogbe-Tay about her knees, including asking Attiogbe-Tay if she was able to complete her assigned duties. Anderson Dep. 18:4-9, 21:2-6. On March 9, 2010, Attiogbe-Tay elected to have knee replacement surgery and was granted twelve weeks of Family and Medical Leave Act (FMLA) leave. Attiogbe-Tay Dep. 39:3-19.

The Colony informed Attiogbe-Tay that her FMLA leave would expire on June 2, 2010, and that she needed to return to work without restrictions by that date. See Bolter Aff. Ex. 5. On June 2, Attiogbe-Tay returned to work and provided a note from her physician saying that she could not kneel, squat or lift more than 50 pounds, but that she was otherwise cleared to return to work. Scott Aff. Ex. 8; Attiogbe-Tay Dep. 57:17-59:15. According to the note, the restrictions were to be in place for six weeks. Scott Aff. Ex. 8.

The Colony's handbook provides that:

> If an employee has taken leave for his or her own serious health condition, prior to

> returning from leave, the employee must provide The [Colony] with certification from his or her health care provider that the employee is able to resume work. If medical restrictions exist at the end of the leave, The [Colony] will review and discuss the situation with the employee, and determine whether the work restrictions can be reasonably accommodated.

Bolter Aff. Ex. 8. The Colony never initiated discussion of potential reasonable accommodations with Attiogbe-Tay. Anderson Dep. 39:2-15. On June 3, 2010, The Colony terminated Attiogbe-Tay[1] and invited her to reapply once her temporary restrictions were lifted. Scott Aff. Ex. 1.

The job description for the LPN position notes that LPNs are occasionally[2] required to kneel, squat and lift up to 100 pounds. Scott Aff. Ex. 3. During her time at The Colony, Attiogbe-Tay would have to lift patients if they had fallen. Attiogbe-Tay was the only LPN scheduled for the overnight shift, but, in the past, had called for assistance from other staff members when lifting patients. Attiogbe-Tay Dep. 107:12-20.

---

[1] The Colony argues that Attiogbe-Tay voluntarily resigned her position because she returned to work with restrictions after being warned of the consequences of doing so. Mem. Supp. 3. For purposes of this motion, the court treats the employment action as a termination.

[2] The job description defines "occasionally" as having a frequency of between one percent and thirty-three percent of an eight-hour shift. Scott Aff. Ex. 3.

On May 7, 2012, Attiogbe-Tay filed this action in Minnesota court, alleging disability discrimination, failure to accommodate,[3] FMLA interference and FMLA retaliation. The Colony timely removed and moves for summary judgment.

**DISCUSSION**

**I. Standard of Review**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, the court views all evidence and inferences in a light most favorable to the nonmoving party. See id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. A party asserting that a genuine dispute

---

[3] Attiogbe-Tay alleges her disability discrimination and failure-to-accommodate claims under both the Americans with Disabilities Act (ADA) and the Minnesota Human Rights Act (MHRA).

4

exists — or cannot exist — about a material fact must cite "particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). If a plaintiff cannot support each essential element of a claim, the court must grant summary judgment because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. <u>Celotex</u>, 477 U.S. at 322-23.

**II. Disability Discrimination**

Attiogbe-Tay argues claims for disability discrimination under the ADA and the MHRA.[4] Both statutes prohibit employers from discriminating against individuals because of their disability. <u>See</u> 42 U.S.C. § 12112(a); Minn. Stat. § 363A.08. A plaintiff may prevail on a disability discrimination claim either by presenting direct evidence or by proceeding under the burden-shifting framework of <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). <u>See</u> <u>Dovenmuehler v. St. Cloud Hosp.</u>, 509 F.3d 435, 439 n.4 (8th Cir. 2007). Under either framework, however, in order to trigger the protections of the ADA or the MHRA, a plaintiff must show that she is a qualified individual with a disability. <u>See</u> <u>Krauel v. Iowa Methodist Med. Ctr.</u>, 95 F.3d 674, 677 (8th Cir. 1996) ("The threshold requirement for coverage under the ADA is that the plaintiff be a qualified individual with a disability." (citation

---

[4] Other than one exception not relevant here, the ADA and MHRA are analyzed under the same standard. <u>See</u> <u>Kammueller v. Loomis, Fargo & Co.</u>, 383 F.3d 779, 784 (8th Cir. 2004).

5

and internal quotation marks omitted)); see also Burchett v. Target Corp., 340 F.3d 510, 516 (8th Cir. 2003) ("To establish a prima facie case of disability discrimination, a plaintiff must show that ... she was qualified to perform the essential functions of the job.").

The Colony argues that Attiogbe-Tay was not a qualified individual. "To be a qualified individual under the ADA, an employee must (1) possess the requisite skill, education, experience, and training for [her] position; and (2) be able to perform the essential job functions, with or without reasonable accommodation." Kallail v. Alliant Energy Corporate Servs., Inc., 691 F.3d 925, 930 (8th Cir. 2012) (alteration in original) (citation and internal quotation marks omitted). Neither party disputes that Attiogbe-Tay possessed the requisite skill and experience necessary for the LPN position. The Colony argues, however, that Attiogbe-Tay was unable to perform the essential functions of the LPN position.

### A. Essential Functions

Specifically, The Colony argues that kneeling, squatting and lifting over 50 pounds - activities from which Attiogbe-Tay was restricted at the time of her return - were all essential functions of the job. An employer bears the burden of showing that a particular function is essential. See Benson v. Nw. Airlines, Inc., 62 F.3d 1108, 1113 (8th Cir. 1995). "Essential functions of

the job are fundamental job duties, and the employer's judgment in this regard is considered highly probative." Duello v. Buchanan Cnty. Bd. of Supervisors, 628 F.3d 968, 972 (8th Cir. 2010) (citation and internal quotation marks omitted). A function is essential when (1) the position exists to perform that function, (2) the function may only be performed by a limited number of employees or (3) it requires special expertise. 29 C.F.R. § 1630.2(n)(2). In addition to the judgment of an employer, other evidence of essential functions includes written job descriptions, amount of time spent performing the function, the consequences of not performing the function and the current work experience of others in similar jobs. Id. § 1630.2(n)(3); see Dropinski v. Douglas Cnty., Neb., 298 F.3d 704, 707 (8th Cir. 2002).

Here, The Colony regarded kneeling, squatting and lifting more than 50 pounds as essential functions of the LPN position. This conclusion is reinforced by the "Physical Job Demands" document which related specifically to the LPN position and was signed by Attiogbe-Tay when she began her employment with The Colony in September 2004. See Scott Aff. Ex. 3. The document reflects that The Colony expected LPNs to kneel, squat and lift up to 100 pounds for between one percent and thirty-three percent of each shift. Id. Moreover, such physical tasks are inherently connected with attending to patients, and the consequences of failing to perform the duties are potentially dire. See 29 C.F.R. § 1630.2(n)(3)

7

(listing the consequences of not performing a function as a relevant factor in determining whether function is essential). As a result, the court finds that kneeling, squatting and lifting over 50 pounds were essential functions of the LPN position. Thus, given the restrictions imposed by her physician, Attiogbe-Tay was unable to perform these essential functions without reasonable accommodation.

**B.   Reasonable Accommodation**

Attiogbe-Tay responds that she would have been able to perform these functions with reasonable accommodations. "In cases where the employee claims that [she] is able to perform the essential functions of the job with a reasonable accommodation, the employee must only make a facial showing that a reasonable accommodation is possible." Brannon v. Luco Mop Co., 521 F.3d 843, 848 (8th Cir. 2008) (citations and internal quotation marks omitted). Reasonable accommodations include "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9)(B). Upon a facial showing by the employee, the burden "shifts to the employer to show that it is unable to accommodate the employee." Fenney v. Dakota, Minn. & E. R.R. Co., 327 F.3d

8

707, 712 (8th Cir. 2003) (citations and internal quotation marks omitted). Attiogbe-Tay argues that The Colony could have reasonably accommodated her by (1) allowing her to call for assistance when a resident fell, (2) providing her with an aide or (3) allowing her a six-week leave of absence until her restrictions expired.

### 1. Calling for Assistance and Providing an Aide

Attiogbe-Tay argues that allowing her to call for assistance with fallen residents and providing her with an aide would have been reasonable accommodations. An employer, however, "need not reallocate or eliminate the essential functions of a job to accommodate a disabled employee." Dropinski, 298 F.3d at 709-10. Allowing Attiogbe-Tay to call for assistance would transfer the essential functions of Attiogbe-Tay's job to other employees, who would then be hampered in the performance of their own duties. See id. As to providing Attiogbe-Tay with an aide, an employer "is not obligated to hire additional employees ... to assist [the employee] in her essential duties." Fjellestad v. Pizza Hut of Am., Inc., 188 F.3d 944, 950 (8th Cir. 1999) (citation omitted). As a result, no reasonable juror could find that allowing Attiogbe-Tay to call for assistance or providing her with an aide would have been a reasonable accommodation.

### 2. Leave of Absence

Attiogbe-Tay next argues that The Colony should have extended her leave for six additional weeks until her restrictions expired. A "medical leave of absence might, in some circumstances, be a reasonable accommodation." Brannon, 521 F.3d at 849. The Colony responds that, even if Attiogbe-Tay can make a facial showing that extended leave would be reasonable, providing such leave would constitute an undue hardship for The Colony.

An undue hardship is "an action requiring significant difficulty or expense." 42 U.S.C. § 12111(10)(a). Whether an accommodation poses an undue hardship is considered in light of the following factors:

> (i) the nature and cost of the accommodation ...;
> (ii) the overall financial resources of the facility ... involved in the provision of the reasonable accommodation; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such accommodation upon the operation of the facility;
> (iii) the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees; the number, type, and location of its facilities; and
> (iv) the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative, or fiscal relationship of the facility or facilities in question to the covered entity.

Id. § 12111(10)(b).

Here, Attiogbe-Tay was the only overnight LPN on duty. Attiogbe-Tay Dep. 71:14-20. To cover Attiogbe-Tay's shifts during

her twelve-week FMLA leave, The Colony paid other nurses on its staff overtime and employed temporary LPNs from a staffing agency. Anderson Decl. ¶¶ 3-4. The Colony asserts that these modifications resulted in an uneven level of care to its residents and fatigue to the other LPNs. Id. ¶¶ 3, 6. The Colony also bore considerable expense - $8,000 in additional staffing costs - as a result of Attiogbe-Tay's twelve-week FMLA leave. Id. ¶ 4. Given The Colony's relatively small staff size, its concerns over the quality of resident care and the negative effects on its budget and staff, no reasonable jury could decline to find that the extended leave was an undue hardship on The Colony. See, e.g., Epps v. City of Pine Lawn, 353 F.3d 588, 593 n.5 (8th Cir. 2003) (noting that a proposed leave of absence was an undue hardship when employer "could not reallocate ... job duties among its small staff of fifteen to twenty-two police officers."). As a result, Attiogbe-Tay was not qualified to perform the essential functions of the LPN position either with or without reasonable accommodations, and summary judgment is warranted.[5]

---

[5] Attiogbe-Tay also argues that failing to participate in an interactive process establishes a prima facie case of disability discrimination. However, "[t]o establish that an employer failed to participate in an interactive process, a disabled employee must show ... the employee could have been reasonably accommodated but for the employer's lack of good faith." Cravens v. Blue Cross & Blue Shield of Kan. City, 214 F.3d 1011, 1021 (8th Cir. 2000) (citation omitted). As already explained, there were no reasonable accommodations available and any claim premised on failure to participate in an interactive process fails.

## III. Failure to Accommodate

Attiogbe-Tay next argues claims under the ADA and MHRA for failure to accommodate her disability. Failure-to-accommodate claims are subject to a modified McDonnell Douglas burden-shifting framework. Fenney, 327 F.3d at 712. "Under the modified burden-shifting approach, the employee must first make a facial showing that [she] has an ADA disability and that [she] has suffered [an] adverse employment action. Then [she] must make a facial showing that [she] is a qualified individual." Brannon, 521 F.3d at 848 (third alteration in original) (citation and internal quotation marks omitted). "The employee at all times retains the burden of persuading the trier of fact that [she] has been the victim of illegal discrimination due to [her] disability." Benson, 62 F.3d at 1112 (citation omitted). Here, as already explained, Attiogbe-Tay cannot demonstrate that she was a qualified individual or that her proposed accommodations were reasonable. As a result, summary judgment is warranted on the failure to accommodate claim.

## IV. FMLA Interference

Attiogbe-Tay also argues that The Colony interfered with her FMLA rights by terminating her upon her return from FMLA leave. The FMLA prohibits an employer "from interfering with, restraining, or denying an employee's exercise of ... any [FMLA] right." Stallings v. Hussman Corp., 447 F.3d 1041, 1050 (8th Cir. 2006) (citation omitted). The Colony, however, allowed Attiogbe-Tay to

take her FMLA-mandated twelve weeks of leave and instructed her to return to work at the conclusion of that leave. Scott Aff. Ex. 5. Upon return from FMLA leave, an employer is "under no obligation to reinstate [the employee] if she remain[s] unable to perform the essential functions of her position." Spangler v. Fed. Home Loan Bank of Des Moines, 278 F.3d 847, 851 (8th Cir. 2002). As already explained, Attiogbe-Tay was unable to perform the essential functions of the LPN position. As a result, Attiogbe-Tay was not entitled to reinstatement under the FMLA and summary judgment is warranted.

**V.  FMLA Retaliation**

Attiogbe-Tay next argues that The Colony retaliated against her for taking FMLA leave. The FMLA prohibits an employer from retaliating against an employee who asserts their rights under the Act. See, e.g., Hite v. Vermeer Mfg. Co., 446 F.3d 858, 865 (8th Cir. 2006); Darby v. Bratch, 287 F.3d 673, 679 (8th Cir. 2002). In the absence of direct evidence of retaliation,[6] the court applies a variant of the burden-shifting analysis set forth in McDonnell Douglas. See Smith v. Allen Health Sys., Inc., 302 F.3d 827, 832

---

[6] Attiogbe-Tay argues that the court should infer retaliatory intent from The Colony's statement that she was required to return to work without restrictions. See Bolter Aff. Ex. 5. Direct evidence, however, "most often comprises remarks by decisionmakers that reflect, *without inference*, a [retaliatory] bias." McCullough v. Univ. of Ark. for Med. Scis., 559 F.3d 855, 861 (8th Cir. 2009) (emphasis added). As a result, the court does not consider this direct evidence of FMLA retaliation and proceeds under the McDonnell Douglas framework.

13

(8th Cir. 2002). To prevail, a plaintiff must first establish a prima facie case of retaliation by showing (1) that she engaged in conduct protected under the FMLA, (2) that she suffered an adverse employment action and (3) a causal connection between the two. Hite, 446 F.3d at 865. Upon a prima facie showing, the defendant has the burden to offer a legitimate, non-retaliatory reason for the adverse action. See Smith, 302 F.3d at 833. The plaintiff must then rebut the defendant's justification by presenting evidence that the proffered reason is pretextual. See id. Summary judgment is inappropriate if the plaintiff presents such evidence and creates a reasonable inference of retaliation. See id.

Here, even if Attiogbe-Tay could establish a prima facie case of retaliation, The Colony has proffered a legitimate, non-retaliatory reason for her termination: that Attiogbe-Tay was unable to perform the essential functions of the position. See, e.g., Basith v. Cook Cnty., 241 F.3d 919, 933 (7th Cir. 2001); Barket v. NextiraOne, LLC, No. 01-278, 2002 WL 1457631, at *5 (D. Minn. July 3, 2002). Attiogbe-Tay argues that this reason is pretextual, as (1) she was immediately terminated upon her return from FMLA leave and (2) after she took FMLA leave, Anderson stated that she would not recommend Attiogbe-Tay for an extended leave of absence because of her work performance. See Bolter Aff. Ex. 19.

The timing of termination alone, however, is not sufficient to demonstrate pretext. Logan v. Liberty Healthcare Corp., 416 F.3d

14

877, 881 (8th Cir. 2005). This is especially true when the timing of the termination is entirely consistent with The Colony's proffered reason for the termination: that, upon the expiration of her FMLA leave, Attiogbe-Tay was unable to perform the essential functions of the job. Moreover, Anderson's comment was made in response to an email requesting that she review Attiogbe-Tay's file to determine whether she was "an employee [The Colony] would want to make the rare exception for of offering [a leave of absence] to." Bolter Aff. Ex. 19. To read Anderson's response to such a request as reflecting retaliatory intent amounts to nothing more than speculation. See Sprenger v. Fed. Home Loan Bank of Des Moines, 253 F.3d 1106, 1113 (8th Cir. 2001) ("The inferences [the plaintiff] would have us draw do not follow naturally from the evidence presented, and would constitute sheer speculation."). As a result, no reasonable jury could find pretext, and summary judgment on the FMLA retaliation claim is warranted.

## CONCLUSION

Accordingly, based on the above, **IT IS HEREBY ORDERED** that the motion for summary judgment [ECF No. 16] is granted.
**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: November 7, 2013

                                             s/David S. Doty
                                             David S. Doty, Judge
                                             United States District Court